Hugh E. **THOMPSON**

v.

The **UNITED STATES.**

No. 171–52.

United States Court of Claims.
April 3, 1956.

Richard L. Merrick, Washington, D. C., for plaintiff. Thomas H. King, Washington, D. C., was on the briefs.

Mary K. Fagan, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff, a major in the Specialist Reserve, Army of the United States, sues for retired pay, on the ground that the action of a retiring board and a disability review board, denying him retired pay, and the action of the Secretary of War, approving them, were arbitrary and capricious.

The facts have been set out in detail in the findings. We shall recite only such facts as seem pertinent to the determination of whether or not the action of these boards and the Secretary of War was arbitrary and capricious.

On January 27, 1942, plaintiff, who was then an employee of the Standard Oil Company of California, on duty in Batavia, Java, was appointed a major in the Specialist Reserve, Army of the United States. He was assigned to duty in Bandoeng, Java. He was then 40 years old.

Prior to his commission, he was examined physically and found to be in good condition. Among other things, the examining board reported that his arteries were normal. This is material because plaintiff claims that he has thromboangiitis obliterans, which is the high-sounding term for the disease commonly known as "Buerger's disease," which is a disease of the blood vessels.

About ten days after plaintiff entered on active duty he tripped and fell while jumping into a trench during a bombing attack on Bandoeng, Java, injuring his right foot, an injury which plaintiff described as "just a sprained ankle." However, after plaintiff had been transferred to Australia, there developed a numbness on the side of his right thigh. It is disputed whether or not there was any connection between the two. This was in April or May of 1942, three or four months after his entry upon active duty.

Some two years later, on March 14, 1944, plaintiff applied for relief from active duty so that he might return to his former employment with the Standard Oil Company. In the meantime plaintiff had carried on his military duties without interruption. His superior officers recommended approval of this application and plaintiff was returned to San Francisco, California, where he was given a terminal physical examination on June 6, 1944. During this examination he told the medical officers that he had experienced attacks of numbness in

his right thigh, whereupon he was hospitalized. About three weeks later an Army Disposition Board recommended that he be sent before a retiring board. He appeared before the retiring board on September 26, 1944, which found that he was incapacitated on account of a disease "of the circulatory system, right lower extremity, manifested by diminished peripheral arterial pulsations and lowered skin temperature," and that the cause of the incapacity was an incident of the service.

The Surgeon General, however, was of opinion that plaintiff was not incapacitated at that time, and recommended that he be given six months' temporary limited duty and be further reexamined at the expiration of that time. Upon receipt of this recommendation, the Adjutant General returned the case to the Army Retiring Board for reconsideration of its findings.

Upon reconsideration, this board found that plaintiff was not incapacitated for active service, but recommended that he "be considered for temporary limited service assignment for six months within the continental limits of the United States, and that he appear before a Disposition Board at the termination of that period."

The Surgeon General concurred, and plaintiff was notified that the Secretary of War had approved its findings except as to the recommendation for limited service, which was disapproved, because no suitable assignment for such service existed.

Plaintiff then, of his own volition, reported to the Pasadena ASF Regional Hospital, Pasadena, California, where he remained until discharged on May 3, 1945.

Plaintiff made application for review by the Disability Review Board, but the Judge Advocate General ruled he was not entitled to such a review.

Thus the matter stood until July 1951, when the plaintiff renewed his application for review of his case by the Disability Review Board. The Judge Advocate General then reversed his previous ruling, and held that plaintiff was entitled to such review.

Upon review by this board, on November 15, 1951, it was held in a three to two decision that plaintiff was permanently incapacitated for active service, but that his incapacity was not the result of an incident of the service. They found that his incapacity was due to the disease known as "thromboangiitis obliterans, right leg," which, as stated, is commonly known as "Buerger's disease." This finding was approved by the Secretary of War.

The Disability Review Board consisted of five members, two of which were medical officers. The majority, which held that plaintiff's incapacity was not an incident of his service, included the two medical officers. The minority were of opinion that the Buerger's disease, with which all five members agreed plaintiff was afflicted, originated after his entrance on active duty in January 1942. The testimony of the medical experts, of whom there were four, two for the plaintiff and two for the defendant, was not definite on the probable date of its origin, and in other respects as well, and in such a case the minority thought that the Army regulations required them to hold that the disease had been contracted after entrance on active duty. They relied particularly upon paragraph 2d of Army Regulation No. 600–140, dated June 29, 1951, reading as follows:

"Irrespective of length of service, a member of the Army will be presumed to have been in sound physical and mental condition upon entering active service or authorized training in an inactive duty status. In order to overcome this presumption, it must be shown by substantial evidence that the injury or disease, or condition causing injury, disease, or death, was sustained or contracted while the individual was neither on active duty nor engaged in authorized training in an inactive duty status. * * *"

The defendant, however, calls our attention to Army Regulation No. 40–1025, subparagraph (4) of paragraph 63(g), the predecessor of the above-quoted regulation, which deals with the aggravation of a pre-existing disease. This subparagraph (4) provides in part:

"* * * Also, incapacitating defects due to certain diseases, such as * * * arteriosclerosis, * *. * and other chronic and degenerative diseases in which the onset is insidious and progress is slow, are of themselves not evidence of increased disability. Unless there was some pertinent local injury, or an abrupt and sudden pathological development during active service, such incapacitating defects may arise as a natural consequence of pre-existing conditions, and not incident to or aggravated by service. * * * "

Attention is also called to paragraph 63(g) (3) (AR No. 40–1025) upon which the minority relied, which reads in part:

"* * * Manifestation of lesions or symptoms of chronic disease, so close to the date of the patient's entrance into active service, that the disease could not have originated in so short a period, will be accepted as clear and unmistakable evidence that the disease existed prior to active service. * * * "

Thromboangiitis obliterans, or Buerger's disease, is hardly to be distinguished from arteriosclerosis, and the medical testimony of all the doctors is to the effect that ordinarily the progress of both of these diseases is gradual, although the development of Buerger's disease is somewhat more rapid than arteriosclerosis obliterans. The doctors were uncertain whether plaintiff's disease was thromboangiitis obliterans or arteriosclerosis obliterans, but, whichever it was, it seems fairly clear that normally the onset is insidious and the progress is slow. Both diseases are chronic. Now, plaintiff entered upon active service in the latter part of January 1942, and first felt this numbness in his right thigh three or four months later; it was,

therefore, reasonable for the Disability Review Board to conclude that the disease had not developed within those three or four months, but had existed prior to plaintiff's entry upon the service.

Notwithstanding the fact that the progress of both arteriosclerosis obliterans and thromboangiitis obliterans is slow, the medical testimony nevertheless showed that an injury might accelerate the progress of the disease. Plaintiff relies on the sprained ankle, which plaintiff suffered ten days after his entry into the service, to show such acceleration. However, we think plaintiff's counsel magnifies this injury. As stated above, plaintiff characterized it as "just a sprained ankle." On cross-examination he was asked: "What were your symptoms when you felt this pain after the jump into the slit trench?" He answered: "I don't recall any more symptoms than anyone would have turning your ankle walking out of this room." The medical testimony attached but little significance to it.

Upon his discharge from the Army plaintiff resumed employment with Standard Oil Company at a salary of $10,000 per year, plus bonuses and allowances, which position he continued to hold for 5½ years. At the time of his testimony in this case he was employed by the Department of Commerce at $9,600 a year. Since his discharge he has drawn disability compensation from the Veterans Administration.

No citation of authority is necessary in support of the statement that the findings of fact of the Retiring Board and the Disability Review Board are conclusive, unless arbitrary or capricious. The Commissioner who heard the testimony of the witnesses and who made detailed findings of fact, which evidenced careful and intelligent consideration of all the testimony, concludes that:

"The findings and conclusion of the majority members of the Army Disability Review Board were supported by substantial evidence and were in accord with well established medical principles. They were not

arbitrary, capricious, unreasonable, or made in bad faith."

We thoroughly agree with this finding.

Defendant in its brief, for the first time, interposed the defense of statute of limitations. Since in this sort of a case this is a jurisdictional question, we should have considered this at the outset, but since it raises controversial legal questions about which there is some uncertainty, and since we are clearly of opinion that plaintiff is not entitled to recover on the merits, we have not discussed this issue.

It results that plaintiff is not entitled to recover and his petition is dismissed.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.